(No. 31080.—

THE CITY OF CHICAGO, Appellee, *vs.* JOSEPH BARNETT, Appellant.

*Opinion filed Sept. 22, 1949—Rehearing denied November 21, 1949.*

BISHOP, MITCHELL & BURDETTE, (JOHN M. FALASZ, ROBERT J. BURDETT, and JOHN H. BISHOP, of counsel,) all of Chicago, for appellant.

BENJAMIN S. ADAMOWSKI, Corporation Counsel, (L. LOUIS KARTON, MARVIN J. PETERS, and ARTHUR MAGID, of counsel,) all of Chicago, for appellee.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

Upon a complaint filed by the city of Chicago in the municipal court, the appellant, Joseph Barnett, was tried, convicted and fined for violating a city ordinance requiring the licensing of insurance brokers. The complaint charged, and appellant's answer admitted, that on April 9, 1948, Barnett conducted, operated and carried on the business of an insurance broker without first having obtained a license, in violation of chapter 113, section 10, of the Municipal Code of Chicago.

Chapter 113 of the Municipal Code of Chicago is an ordinance entitled "Brokers." Section 10 of the ordinance provides that it shall be unlawful for any person to engage in the business of or to act as an insurance broker without first having obtained a license therefor. Section 9 defines "insurance broker" as meaning any person who for money, commission, brokerage, or anything of value acts or aids in any manner in the solicitation· or negotiation on behalf of the assured of contracts of insurance on lives, buildings, vessels, or other property, including workmen's compensation, personal accident and disability, plate glass, automobile, and all forms of casualty insurance, and fidelity and surety bonds.

The trial judge has certified that the validity of a municipal ordinance is involved and the public interest requires a direct appeal to this court.

The sole question presented by this appeal is whether or not section 91 of article 23 of the Revised Cities and Villages Act, conferring on municipal authorities the power to license, tax and regulate brokers, (Ill. Rev. Stat. 1947, chap. 24, par. 23-91,) gave to the city council of Chicago the power to pass the portions of this ordinance relating to insurance brokers.

We find that municipal corporations owe their existence to, and their powers are derived solely from, the General Assembly. They have no inherent powers, and in order to· legislate upon or with reference to any particular subject, they must be able to point to the statute which gives them the authority to exercise the power which they claim the right to exercise. Statutes granting powers to municipal corporations are strictly construed and any fair or reasonable doubt of the existence of the power is resolved against the municipality which claims the right to exercise it. Therefore, since a city has no power, except by delegation from the General Assembly, to impose any tax or

license fee, the power to do so must be expressly granted by the legislature or necessarily implied in, or incident to, other powers which are expressly granted. *Father Basil's Lodge, Inc.* v. *City of Chicago,* 393 Ill. 246; *Arnold* v. *City of Chicago,* 387 Ill. 532; *City of Bloomington* v. *Wirrick,* 381 Ill. 347; *Arms* v. *City of Chicago,* 314 Ill. 316.

Article 23 of the Revised Cities and Villages Act, containing 109 sections, is a grant of the powers therein enumerated to the corporate authorities of municipalities. Section 91 of that article gives to municipalities the power "to license, tax and regulate auctioneers, private detectives, money changers, bankers, brokers, barbers, and the keepers or owners of lumber yards, lumber storehouses, livery stables, public scales, ice cream parlors, coffee houses, florists, detective agencies, and barber shops."

It is not contended that a city does not have the power under this section to license, tax and regulate brokers, but appellant contends that "an insurance broker," as defined in the ordinance, is not a "broker" within the legal definition of the term as the same is used in the statute. It is contended that the ordinance, in describing an insurance broker as one who acts on behalf of the assured, is describing an agency relationship, that no power has been granted municipalities to license, tax or regulate agents, that an insurance broker, as defined in the ordinance, is an agent in precisely the same field as an agent of an insurance company, except that he acts for the other party to the transaction, that inasmuch as a city has no power to license, tax or regulate agents of insurers, likewise, upon the same principle, it can have no power to license, tax or regulate agents of the assureds, that a broker is one who represents either or both parties to a transaction whether such parties be buyer and seller of insured and insurer, and that a city cannot by ordinance declare a person a broker who is not a broker, thereby bringing him within the power of the

municipality to license, tax and regulate brokers. The issue, therefore, is narrowed to an interpretation of the word "brokers" as used in the statute above quoted.

Brokers are of many kinds, according to the particular class of transactions in which they engage. The word "broker," when not used in connection with other words restricting and limiting it to brokers of any certain kind, is a general term, including within its scope brokers of every class and description. A broker is an agent who bargains or carries on negotiations in behalf of his principal as an intermediary between the latter and third persons in transacting business relative to the acquisition of contractual rights, or to the sale or purchase of any form of property, real or personal, the custody of which is not entrusted to him for the purpose of discharging his agency. (Ballentine's Law Dictionary; 8 Am. Jur., Brokers, sec. 2.) Bouvier's Law Dictionary defines "brokers" as those who are engaged for others in the negotiation of contracts relative to property, with the custody of which they have no concern, and follows with the explanatory statement that "A broker is, for some purposes, treated as the agent of both parties; but in the first place, he is deemed the agent only of the person by whom he is originally employed, and does not become the agent of the other until the bargain or contract has been definitely settled, as to the terms, between the principals, when he becomes the agent of both parties for the purpose of executing the bought and sold notes." Webster's New International Dictionary, Second Edition, defines broker as follows: "One who, for a commission or fee, brings parties together and assists in negotiating contracts between them. Such contracts ordinarily cover the sale of property, but real-estate brokers negotiate leases, ship brokers negotiate charter parties, etc. The broker does not, as broker, take possession of, or have a lien upon, the subject matter of the negotiation; he does not contract in his own name except where this rule is

varied by local custom or the like. He is primarily the agent of the party who originally employs him, but for some purposes, as the execution of the broker's note, he is the agent of both parties."

An insurance broker is defined in Ballentine's Law Dictionary as follows: "One who acts as a middleman between the assured and the insurer, and who solicits insurance from the public under no employment from any special company, but having secured an order, he either places the insurance with a company selected by the assured, or in the absence of any selection by him, then with a company selected by such broker. A broker is the agent for the insured, though at the same time for some purposes he may be the agent for the insurer, and his acts and representations within the scope of his authority as such agent are binding on the insured." Other authorities also define an insurance broker as one who acts as a middleman between the insured and insurer, and who solicits insurance from the public under no employment from any special company, but, having secured an order, places the insurance with a company selected by the assured, or, in the absence of any selection by him, then with a company selected by such broker. (29 Am. Jur., Insurance, sec. 86; 12 C.J.S. Brokers, sec. 1.) Insurance brokers procure insurance and negotiate between insurer and insured. (Bouvier's Law Dictionary.) Webster's New International Dictionary defines an insurance broker as "A broker who usually acts as the agent of the insured in making contracts of insurance. Sometimes the broker is declared by statute to be the agent of the insurer for certain purposes, as payment of the premium, and of the insured for all other purposes." The essential and basic feature underlying the relation of a broker to his employer is that of agency, and the principles of law applicable to principal and agent govern their respective rights and liabilities throughout. (8 Am. Jur., Brokers, sec. 14.) We held in *France* v.

*Citizens Casualty Co.* 400 Ill. 55, "The rule is that an insurance broker like any other broker, is the agent of the person who employs him. If an insurance broker is engaged to purchase insurance covering property of the one employing him, he becomes the agent of the insured and not the insurer. (*Lycoming Fire Ins. Co.* v. *Rubin*, 79 Ill. 402.) It is true that under certain circumstances a broker may become the agent of the insurer or, on full disclosure to both parties, he may be the agent for both the insurer and the insured as to some particular matters." The word "agent" is a broader term than "broker," more comprehensive in its legal scope, for while every broker is in a sense an agent, every agent is not a broker. (12 C.J.S., Brokers, sec. 3.) A broker is distinguished from an agent in that a broker sustains no fixed and permanent employment by, or relation to, any principal, but holds himself out for employment by the public generally, his employment in each instance being that of special agent for a single object, (*El Reno Wholesale Grocery Co.* v. *Stocking,* 293 Ill. 494,) whereas an agent sustains a fixed and permanent relation to the principal he represents and owes a permanent and continued allegiance. A broker does not cease to be a broker because he may also in some transactions act as the agent of either or both of the parties thereto.

Appellant has cited a number of cases of the Appellate Court which he contends are authority for holding a city has no power to tax, license and regulate any person who solicits or negotiates, on behalf of the assured, life, accident, health, casualty, fidelity, surety, fire and marine insurance contracts. These cases correctly hold that under the power granted by the General Assembly to cities and villages to tax, license and regulate brokers, a city or village has no power to tax, license and regulate agents representing insurance companies or representing manufacturers, to whom they sustain a fixed and permanent relation, for

the reason that such agents are not brokers. These cases, however, do not, in any way, hold that a city has no power to tax, license and regulate persons whose activities bring them within the definition of "insurance brokers" contained in the ordinance here in question, since, as we have above pointed out, such persons are brokers.

We fail to see how these cases, relied upon by appellant, support his attack upon the validity of the ordinance in the instant case. The meaning of the word "broker," both in law and popular usage, includes within its scope that class of persons described in the definition of "insurance broker," contained in the ordinance.

In accordance with our views as hereinabove set forth, the judgment of the municipal court is affirmed.

*Judgment affirmed.*